Mr. Preble, you may proceed. Thank you. May it please the Court, my name is Gary Preble. I represent the plaintiffs, appellants in this matter, Maya Tracy and M.T. Left standing in this case at this point are the cases against Jennifer Knight and MultiCare Health System. Although, as you know, we first also sued the Child Protective Services and the school district. Are these state law claims? We have one state law claim and we have one 1983 claim. And the 1983 claim is? Is that the violation of family unity and specifically having to do with keeping Maya out of the examination room during the invasive rectal, involuntary invasive rectal exam of her son. I had just a quick question. Is there anything on the record that indicates that MultiCare or Jennifer Knight were state actors? Yes. And I would direct the Court to one of the last documents in the states, excuse me, I apologize, in the hospitals. One of their declarations explains about what the CAC was. And it lays out, and I'm sorry I can't lay my hands upon it at this moment, here it is, number 43. Is it ER 43? Yes. A declaration of Jody Hawthorne, the final page, says the CAC is made up of representatives of local law enforcement agencies, prosecuting authorities, CPS, medical, mental health and advocacy services. MHS is the lead agency for the CAC, providing case management and coordinating joint investigations to the CAC. And then it says the CAC and CAID are located on their Mary Bridge campus at the Safe and Sound building. So if we look at whether Cress's, because they called the police on this white woman who was eating with her and the term was used, if that is a state action, then certainly these people who are housed together, who are doing the forensic investigation at the request of the government are certainly state actors. So you're asking us to make them state actors by virtue of the function they perform as opposed to any organizational charter who pays them and the like? I think the answer to that is yes, correct. That they're all there together. They have offices together. I understand that. But, you know, we all share chambers with our clerks, but they're not Article III judges. So that doesn't, you know, it doesn't mean that just because somebody's in the same place that they necessarily have the same function or in this case are state actors, does it? Except in this case it is they do all have the same function because it says it's a multi-agency body founded to offer a coordinated and comprehensive approach to the investigation and treatment. Well, if they are assuming for a moment that they are state actors, don't you have a problem with qualified immunity? I don't think so. Why not? Why were they violating clearly established rights here? Because the, you know, we quoted Camretta, and although Camretta has taken another course, nevertheless the part that we quoted about Camretta remains valid. I was just reading that carefully again. But Camretta was based upon Wallace, and also there's Tenenbaum in the second district as well. So the clear, as to Maya being in the examination room during this involuntary invasive examination, it's clearly established that the right to parent unity and child unity is the right to be present when there are I thought there were exceptions, though. If there's a valid reason for excluding the parent, that's acceptable, is it not? Well, I think that puts us into, rather than dealing with that as an issue of law, I think that puts us into the area of fact. But back to Judge Schroeder's question, certainly after AL-KID, the issue of qualified immunity means you've got to have a case basically on all fours to give the person reasonable notice. And in this case, you have any case law that suggests that under the circumstances of this case where the mother apparently did coach the child, and they felt that it was inappropriate for her to be there in the examination room, why is there any case law that is clearly squarely on point that would warn these people, whether or not they were state actors, that they were violating a clearly established constitutional principle? I think, first, I think when you said coach, that you're taking the perspective. I don't know whether it's true or not. I'm simply saying that the record seems to indicate that that's what they were concerned about. Well, I would turn that around and say, what is there, and we pointed this out in our briefing, what is there about the medical exam that indicates that the mother can't be there to comfort her child? Well, let's be logical about this. If the mother coached the child what to say before, why couldn't the mother in the exam say, you know, sweetheart, if they ask you any questions, don't answer them, or if they ask you whether anybody touched you, don't talk to them. I mean, that's not an unusual situation, is it, in this setting? Because they were presuming ahead of time the entire knowledge of the situation because the Child Protective Services was there, and they knew that Maya had been very diligent previously regarding issues of abuse by Austin and that she had dealt with that immediately. And so in this situation, rather than coming to Maya and say, Maya, did you tell him what to say? They just assumed. Why would they have to take her word for it? You have to look at it from the point of view of the state actor, as I understand it. And you put yourself in the position of a reasonable, in this case, nurse, and in other cases a police officer, based on what they reasonably apprehend the circumstances to be, unless what they're doing is clearly out of the box, they have qualified immunity. And those are things that have to get decided pre-trial, as I understand the state of the law. So explain to me how someone in the nurse's position here, Ms. Knight's position, had to know that she was violating a clearly established right. I think that her actions precluded her recognition. What does that mean? Her actions were that she presumed immediately. She came in and yelled at Maya. Rather than saying to Maya, you know what he just said? He said this. Maya could have explained that. Then at that point they said, well, we're still going to have to do the exam. But counsel, with respect, you're not answering Judge Fogle's question. You know, reasonable people can disagree about what someone should or should not have done. But the question before us on this particular point is, was the law so clear at this point that she should have known that if she did what happened here, she would be violating a clearly established constitutional right? Judge Fogle saying, where's the case? Where's the law that makes this absolutely clear? Not that you argue whether she should or should not have done something. Well, I think that the statement of the court in Tenenbaum says, when Sarah was subjected to a gynecological exam, she almost certainly did, in fact, experience psychological injury. But that's a different issue, is it not? I apologize. The issue is that the mother and the son had a right to be there, and it was only because of their unreasonable actions that they precluded that right. Wallace, while it says there are times when they don't need to be there, there may be reasons for it, they did not have a reasonable basis in this case to say that Maya shouldn't be there. And when he started crying before they let him in there, that should have been noticed. And when he started screaming when they were invading his body, that should have been noticed. And it was only until after they had finished what they were doing and were cleaning him up like they let the mother in, that was too late in the process. Okay. I think we understand your position. Okay. And if I just might wrap up that point, there are two points in Wallace. There is the right that there are some exceptions. There are times when there shouldn't be. In this case, the circumstances were such that they should not have excluded. I think that it is fact-based here. Okay. Thank you. Thank you. The other issue is the outrage issue for M.T. M.T., this should at least be sent back to the state court if the federal court wants to dismiss it. With respect, counsel, how can you equate at least what I understand to be Washington's claim for outrage, tort of outrage, how can you equate that and what happened here? You've got alleged child molestation. They want to check this out. They have a licensed person who does this in a situation that is, I gather, fairly routine for this horrible kind of situation. How can that possibly qualify as an outrage under Washington law? It isn't even close, is it? Yes, it is. You look at it from the child because if that child had been raped, I'm sure that he would not have felt any different than what he endured in the ---- So you're saying that if the state of Washington does an anal or gynecological examination of a child that has allegedly been molested, it is per se committing the tort of outrage. Is that what you're saying? No, but under the circumstances here where he was crying before ---- Well, see, that's a different issue. I'm just saying this is what the record shows happened. The child may or may not cry. I don't doubt that it's an emotionally difficult situation, but the fact that the child was allegedly molested is a very difficult situation. And I find it difficult to believe that you're seriously arguing that this is a per se violation, a commission of the tort of outrage. Well, I would point you to Dr. Rybicki's statement. He said, I find it interesting that they're willing to believe the child when they want to and not when they don't. And that is part of the problem here. And if you look at Dr. Giraldi's report, which the state puts ---- I'm sorry, I can't pick the exact ---- Oh, yes, I can. I can pick the exact point on their number seven of their argument. It says, she said, normal-abuse may have occurred-no physical findings. What we have here is a situation of bias. Why does she put in abuse may have occurred? Because this whole process is so focused on the outcome of there being abuse. And that is an impartial answer to your question, Judge. And I will reserve the remainder of my time. All right. Your Honors, good morning. For the record, David Corey for Appellee's MultiCare and Jennifer Knight. I'd like to begin, if I may, with a brief discussion of the statute of limitations issue, which we didn't hear about a moment ago. Jennifer Knight's one and only contact with the Tracy family was on June 19, 2006. The first lawsuit filed in this case was on July 31, 2009. More than three years later, Knight and MultiCare moved for summary judgment on the adult claims. Based on Washington's three-year statute of limitation, Ms. Tracy made a tolling argument in response. Judge Bryan correctly rejected that tolling argument for two reasons. One, that Ms. Tracy had failed to show that Knight and MultiCare were a state or local government entity subject to the tolling statutes in the first place. And indeed, the Tracy's own pleadings alleged that MultiCare was a private corporation and that Knight was MultiCare's employee. And secondly, that even if subject to tolling, that Maya Tracy had failed to show that she had actually given pre-suit notice to these entities. And, of course, she did not. As the non-moving party, she had the burden under Celatex to come forward with this information, to establish this defense. She failed to do so. The argument articulated in her briefing attempts to stand Celatex on its head and shift the burden to the moving party on summary judgment to somehow prove a negative. That's simply not the law here. It was her burden. She failed to meet her evidentiary burden. Judge Bryan correctly held that the adult claims here, both under 1983 and under the tort of outrage, were time-barred, and this Court should affirm on that. And unless there are questions on that, I'll move ahead to the 1983. We feel that the appellant's 1983 claims against Jennifer Knight failed for two reasons. One, there was no state action. And secondly, there was qualified immunity. The Tracy's didn't plead that Jennifer Knight was acting under color of law. They pledged she was a private employee of a private corporation. All of the events here happened on the campus at Mary Bridge Children's Hospital, which is a private hospital. On summary judgment, the defendants showed that Knight was a forensic investigator or forensic interviewer employed by MultiCare. Judge Bryan found that although the Tracy's had made some conclusory allegations, that they had not come forward with specific facts to substantiate their new argument that she was a state actor. Specifically, the Tracy's failed to show that the state had any direction or control over the manner in which Ms. Knight performed the forensic interview. They failed to show that Knight acted in concert with the state in any way, and they failed to show that Knight had entered some meeting of the minds with CPS investigator Amy Kernkamp to deprive the Tracy's of their rights. Judge Bryan correctly held that they hadn't met their burden on that, and this Court should affirm. There was some discussion about the CAC. I can address that if the Court wishes or move ahead to the qualified immunity argument. Under qualified immunity, Jennifer Knight enjoys the benefit of immunity insofar as her conduct did not violate a clearly established constitutional right of which a reasonable person would have known. The thrust of the plaintiff's argument seems to be that there was a violation because Maya Tracy was kept out of the child's room during the examination itself. The key facts here are that Maya Tracy consented in writing to this examination. The examiner, Dr. Duralde, was not sued. The complaint did not level any criticisms of Dr. Duralde or of the manner in which the physical examination was conducted. At her deposition, I asked Maya Tracy if she had any criticism of Dr. Duralde or of anybody else at MultiCare besides Jennifer Knight. The answer was no. And on appeal, the sole contention of the appellants here is that Knight, not Duralde or anybody else. Well, I guess the contention is that she should have been allowed in and that Knight essentially said don't let her in. Right. And the two cases cited for that proposition by the appellants simply don't stand for the position they've taken here. Those are the Green case and the Wallace case. They're both factually distinguishable. In Wallace, I'm sorry, in Green, the child in Green had been placed into protective custody for 20 days before the examination took place. When it finally did, the parent was ordered not just to leave the room but to leave the entire facility. And in the Wallace case, and I really encourage the court to take a careful look at the Wallace case and contrast the facts of that case to the facts here. In Wallace, based entirely on a tip from a mentally ill and institutionalized aunt who'd had no contact with the family in over a year, local police came to the family home in the middle of the night and absconded the children, placed them in undisclosed foster care locations for some two and a half months, and then subjected the children to photographed body cavity examinations without notice to or consent from the parents. This is a completely different situation from what Your Honors face here, where MT was never placed in protective custody, where Maya Tracy brought her son to Mary Bridge voluntarily after having made an appointment for this examination. She came to the facility and signed a consent form. She was allowed to remain in an adjacent room during the examination, and as soon as the exam was over, she was allowed into the room. She was separated from her son for a matter of minutes. And so for the appellants to argue now that that violates some clearly established right that any person would recognize is certainly not what the Wallace court had in mind. Unless my colleagues want to ask you about qualified immunity, I was interested in your comments about the outrage claim, because as far as I know, there's not a qualified immunity defense available there. Right. So why are you entitled to summary judgment on that? Well, because under Washington law, it's clear that insults and dignities and threats are not sufficient to support an outrage claim. The burden on the plaintiff is to demonstrate conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community. I would really encourage- What's the leading Washington case on outrage? Well, there have been several pronouncements on that issue, but they all say that it is for the court to decide first as a matter of law whether the alleged conduct is qualitatively sufficient to support a claim of outrage. And the published cases in Washington are replete with examples of cases- Well, what's the most helpful case in your view? I don't think that I can cite for your honors a case that is factually comparable to this one. But outrage is- The Roble v. Roundup Corporation case, for example, articulates that it's first for the court to decide whether the alleged conduct is qualitatively sufficient to determine if reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability. The conduct is alleged by the plaintiff. Certainly. And you take everything they said is true and you give them all favorable inferences. That's right. And if that's all true, it still doesn't amount to outrage as a matter of law under Washington law. That's right. And I think that what the court would find most helpful here would be to take a careful look at the videotape. This forensic interview is less than nine minutes long. It was video recorded. The video is in evidence. It was considered by Judge Bryan. He found that reasonable minds couldn't differ after reviewing the videotaped evidence. But this was a summary judgment. That's right. So we're not looking at just the allegations. This is objective evidence, the manner in which the forensic interview was conducted, and it's also objective evidence of the frame of mind of Jennifer Knight at the time in question, which is part of the inquiry under outrage. It's part of what the court is to decide initially is whether the actor appeared to be of a frame of mind to intentionally inflict extreme emotional distress. I guess I want to follow up on what Judge Schroeder asked on this. If, as you well know, in a summary judgment situation, if you've got a material dispute about factual issues, then that ought to be determined by the trier of fact. Under Washington law, when the tort of outrage is analyzed, is it for the court alone to make a determination that no one could possibly find conduct alleged by the plaintiff to be outrage? You don't even get to the issue of the trier of fact. As a threshold question, yes. And what authority do you cite for that? That's the same citation I mentioned a moment ago, and let me find it again. The Robel v. Roundup court case. Although the issue of whether certain conduct is sufficiently outrageous is usually left to the jury, it is initially for the court to determine. And what's the cite on that again, please? It's 59P3-611. It's a Washington 2002 case. Well, this is getting, this gets a little confusing. If you look solely at the allegations that there was an examination of this child in the absence of his mother, and he was screaming and very upset by this, and they prevented the mother from getting in there, you might very well have something that, looking solely at the allegations, might be outrage. Now, as I understand it, you, this went off on summary judgment, and you are relying not merely on our looking at the, you are not telling us to look just at the allegations, but at the undisputed facts that are in the record, which include this video. That's correct. Yes. But this is a case in which there are allegations and there are allegations. Right. I would again direct the court back to the contentions leveled in the complaint, where Dr. Duralde, the examiner, the person who conducted this physical exam, was not named as a defendant, was not criticized in the body of the complaint. Right. When asked at her deposition whether she had any criticism in which the, with the manner in which the exam was performed, Maya Tracey's answer was an unequivocal. Right. It's keeping the mother out. Well, if as the green court has held, that there are multiple circumstances justifying excluding a parent, not only from the exam room, but from the entire examination facility, and those circumstances included parental consent, some legitimate basis for exclusion, such as what the state articulated here and the appellants didn't rebut, or an emergency requiring immediate medical attention. So we can very clearly see that the right to be present in the room is not absolute. In fact, the right even to be present in the facility is not absolute. If that is so, then how can the same conduct be considered sufficient to support the tort of allegations? Well, it depends, I suppose, as to if it's, if you're not looking at qualified immunity and you're just saying it's, there are exceptions, then I can imagine a case where there would be issues of fact. You're just saying here that the outrageous allege essentially is the act of exclusion itself and that if you look at the record that the court had on summary judgment, no reasonable trier of fact could have concluded that that was outrageous. I mean, that's your argument, right? I mean, that's what the district court ended up finding. It is. If the green court has already established that there are circumstances justifying excluding a parent from not only the room but the facility, then that same conduct simply can't be said to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community.  Thank you, Your Honor. Thank you. Mr. Gravel. Following on that last point, and perhaps Judge Schroeder's questions, I'd like to think of the lunchtime conversation. And when this gets passed around at the lunchtime, the people are going to say, that is outrageous. And that is exactly what the Washington court said. Wait a minute. So you're saying that the fact that Ms. Knight was the cause of this woman being excluded from her child's exam, that that's the outrage? Yes. And the child, as to the child, that the mother being excluded. Yeah, no, I understand that. But I just want to be sure we're all talking the same thing. It's not her exclusion. It is the exclusion. It's not the examination itself. Exactly. And that is the examination, as you asked earlier, you know, and I think I missed your question. Yeah, because there really was no allegation about the doctor, right? No. It's the exclusion. And remember, while you did say that they had the speculation about Maya based upon what M.T. had said, Maya had done nothing in their presence as far as they knew. And, again, that goes to reasonableness. She consented under duress. On a summary judgment basis, there's no way around that. As to, you know, I realize there is a couple pages missing here, and I'm extremely embarrassed, but the state and the school admitted that in their responses that the tort claim was filed. Tort claim was what? Was filed. And so the judge held against us because we had only alleged it in our pleadings, but, in fact, the other parties had admitted it in their responses. And I would like the opportunity to do a further excerpt of record to include those pages. If we wish to have that, we'll ask for it. Okay. If we think there's a problem. Okay. All right. You have used your time now. Thank you. Are there any further questions? No. Thank you. Thank you, Judge. The matter just argued is submitted for decision. That concludes the Court's calendar for argument this morning. The Court stands adjourned.
judges: Fogel, Schroeder, Smith M.